**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CALVIN ROBINSON,<br><br>                                    Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>                                    Defendant. | 3:13-cv-00567-RCJ-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

      This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff Calvin Robinson's Motion for Remand and/or Reversal. (Doc. # 11.)[1] Defendant Commissioner filed a Cross-Motion to Affirm the Commissioner's decision (Doc. # 13) and response to Plaintiff's motion (Doc. # 14).[2] Plaintiff filed a reply. (Doc. # 15.) After a thorough review, the court recommends that Plaintiff's motion be denied and the Commissioner's cross-motion be granted.

## I. BACKGROUND

      On August 19, 2010, Plaintiff filed an application for Disability Insurance Benefits (DIB). (Administrative Record (AR) 142-147.) On September 2, 2010, he filed an application for Supplemental Security Income (SSI). (AR 148-152.) In both applications, he alleged an onset of disability beginning August 8, 2010. (AR 144, 148.)

      The Commissioner denied his application initially and on reconsideration. (AR 77-82,

---

[1] Refers to court's docket number. Unless otherwise indicated, all page number references are to the court's docketed page numbers.

[2] These two documents are identical.

88-95.) Plaintiff made a timely request for a hearing before an Administrative Law Judge (ALJ) to challenge the Commissioner's determination. (AR 96-97.) The ALJ held a hearing on April 10, 2010. (AR 33-64.) Plaintiff appeared for the hearing, represented by counsel, and testified. (AR 39-57.) In addition, the ALJ took testimony from a vocational expert (VE). (AR 57-64.)

The ALJ followed the five-step sequential process for evaluating such claims, and issued a written decision on April 30, 2012, finding Plaintiff not disabled under the Social Security Act. (AR 17-28.) Plaintiff appealed and the Appeals Council denied review. (AR 1-4.) Thus, the ALJ's decision became the final decision of the Commissioner.

Plaintiff now appeals the ALJ's decision to the District Court. (Doc. # 11.) Plaintiff argues that the ALJ failed to properly assess the effects of Plaintiff's obesity on his ability to work, and failed to articulate clear and convincing reasons supported by substantial evidence for finding Plaintiff less than credible. (*Id*.)

Conversely, the Commissioner argues that the ALJ properly considered all of Plaintiff's functional limitations that were established in the medical evidence and Plaintiff failed to present any objective evidence that his alleged obesity impacted his ability to perform basic work functions. (Docs. # 13/14.) In addition, the Commissioner argues that the ALJ properly found Plaintiff's testimony not fully credible, stating that his subjective symptoms were contradicted by clinical examinations and observations. (*Id*.)

## II. STANDARD OF REVIEW

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez*, 740 F.3d at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may

not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, --- F.3d --- , 2014 WL 3397218, at * 11 (9th Cir. July 14, 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, --- F.3d --- , 2014 WL 3397218, at * 11 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

### III. DISCUSSION

**A. Five-Step Sequential Process**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(b).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S.

137, 140-41 (1987). If at any step the Social Security Administration (SSA) can make a finding of disability or nondisability, a determination will be made and the SSA will not further review the claim. 20 C.F.R. §  404.1520(a)(4) and §  416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). "'The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five.'" *Garrison*, --- F.3d --- , 2014 WL 3397218, at * 13 (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009)).

In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. §  404.1520(a)(4)(i), (b); §  416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or a combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. Basic work activities are "the abilities and aptitudes necessary to do most jobs[,]" which include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.

20 C.F.R. §  404.1521 and §  416.921. If a claimant's impairment is so slight that it causes no more than minimal functional limitations, the Commissioner will find that the claimant is not disabled. 20 C.F.R.§  404.1520(a)(4)(ii), (c) and 416.920(a)(ii). If, however, the Commissioner finds that the claimant's impairment is severe, the Commissioner proceeds to step three. *Id*.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and §  416.920(a)(4)(iii), (c). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. §  404.1525(a). If the claimant's impairment meets or equals one of

the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(b)(1).

In making this determination, the Commissioner assesses the claimant's "residual functional capacity" (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 1545 and § 416.945. In determining RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. 20 C.F.R. § 404.1545(a) and § 416.945(a)(3).

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform work available in the

national economy. 20 C.F.R. § 404.1520(e) and § 416.290(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez*, 740 F.3d at 528. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

"The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted). The Grids place jobs into categories by their physical-exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels. *Id*. Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education and work experience. *Id*. For each combination of factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category. *Id*.

The Commissioner may not rely solely on the Grids unless they accurately and completely describe the claimant's abilities and limitations. *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985) (citation omitted). The ALJ must take the testimony of a vocational expert where the claimant suffers from non-exertional limitations that are "sufficiently severe so as to significantly limit the range of work permitted by his exertional limitation." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (internal quotation marks and citation omitted).[3] Further,

---

[3] "[S]atisfaction of the step two threshold requirement that a claimant prove her limitations are severe is not dispositive of the step-five determination of whether the non-exertional limitations are sufficiently severe such as to invalidate the ALJ's exclusive use of the grids without the assistance of a vocational expert." *Hoopai*, 499 F.3d at

1 where the Commissioner finds that a nonexertional limitation alone is severe (at step two of the
2 sequential process) (absent any exertional limitation), the Commissioner is not required to seek
3 the assistance of a vocational expert at step five unless the nonexertional limitations are
4 "significant, sufficiently severe, and not accounted for in the grid[s]." *See id*. at 1076.

5 If the ALJ relies on a vocational expert, he can call upon the vocational expert to testify
6 as to: "(1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the
7 availability of such jobs in the national economy.'" *Garrison,* --- F.3d --- , 2014 WL 3397218, at
8 * 13 (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999) (alteration original)). "The
9 ALJ may pose hypothetical questions to the expert that 'set out all of the claimant's impairments'
10 for the VE's consideration." *Id*. (quoting *Gamer v. Secretary of Health and Human Servs.*, 815
11 F.2d 1275, 1279 (9th Cir. 1987)). "'The ALJ's depiction of the claimant's disability must be
12 accurate, detailed, and supported by the medical record.'" *Id.* (quoting *Tackett*, 180 F.3d at 1101).
13 "The testimony of a [VE] is valuable only to the extent that it is supported by medical evidence'
14 and has 'no evidentiary value if the assumptions in the hypothetical are not supported by the
15 record.'" *Id*. (quoting *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989)).

16 If at step five the Commissioner establishes that the claimant can do other work which
17 exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely,
18 if the Commissioner determines the claimant unable to adjust to any other work, the claimant
19 will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071;
20 *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

21 **B. ALJ's Findings in this Case**

22 In this case, the ALJ applied the five-step sequential evaluation process and found, at step
23 one, that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of
24 August 8, 2010. (AR 22.)

25 At step two, the ALJ found it was established Plaintiff suffered from the following severe
26 impairments: degenerative disc disease of the lumbar spine and degenerative joint disease of the
27 left knee. (AR 22.)

28

---

1076.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 23.)

At step four, the ALJ found Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except: he would require a sit-stand option; he would be limited to occasional stooping, kneeling, crouching, and never crawling; he would be limited to occasional climbing of stairs and ramps and could never climb ladders, ropes and scaffolds; he would be limited to occasional bilateral reaching above the shoulder; he should avoid concentrated exposure to extreme cold and heat and to hazards such as unprotected heights and dangerous or moving machinery. (AR 23.) The ALJ concluded, based on the VE's testimony, that given his RFC, age, education and work experience, Plaintiff could not perform any past relevant work. (AR 26.)

At step five, the ALJ asked the VE to consider Plaintiff's age, education, work experience and RFC, and determine whether jobs exist in significant numbers in the national economy that Plaintiff can perform. (AR 26-27.) The VE testified Plaintiff could perform the jobs of a mail clerk (Dictionary of Occupational Titles (DOT) 209.687-026); photocopy machine operator (DOT 207.685-014); and cashier (DOT 211.462-010), and that such jobs existed in significant numbers in the national economy. As such, the ALJ found Plaintiff was not disabled from his alleged onset date through the date of the decision. (AR 27.)

**C. Obesity**

Plaintiff contends that he is obese according to the National Institutes of Health (NIH) obesity classification[4]; however, the ALJ did not find obesity to be a severe impairment. (Doc. # 11 at 6-7.) He contends that a proper evaluation of his obesity when viewed together with his other severe impairments would result in an RFC of no more than sedentary exertion which would render Plaintiff disabled under the Social Security Act. (*Id*. at 7-9.) Plaintiff argues that the ALJ erred in providing no analysis of Plaintiff's obesity in her decision. (*Id*. at 9.)

---

[4] The Commissioner acknowledges that according to his Body Mass Index (BMI) at the time of his consultative examination in December 2010, Plaintiff came within the NIH category of level II obesity. (Docs. # 13/14 n. 1.)

The Commissioner argues that Plaintiff presented no objective medical evidence that his obesity impacted his ability to perform basic work functions; therefore, the ALJ was not obligated to discuss this condition. (Docs. # 13/14 at 3.) The Commissioner points out that not a single doctor diagnosed Plaintiff with obesity, nor did any doctor opine Plaintiff had any obesity-related limitations. (*Id*. at 4.)

In 2002, a new Social Security Ruling was issued specifically addressing obesity. Social Security Ruling 02-1p (2002), 2002 WL 34686281.[5] "Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems." Id. at * 3. "The fact that obesity is a risk factor for other impairments does not mean that individuals with obesity necessarily have any of these impairments." *Id.* Instead, "[i]t means that they are at greater than average risk for developing other impairments." *Id*. The Ruling provides that obesity can be a severe impairment if, when considered alone or combined with other impairments, "it significantly limits an individual's physical or mental ability to do basic work activities." *Id*. at * 4. In considering whether obesity is a severe impairment, the ALJ is also to consider "the effects of any symptoms (such as pain or fatigue) that could limit functioning." *Id*. In assessing the severity of obesity, the Rulings states that an "individualized assessment of the impact of obesity on an individual's functioning" is necessary. *Id*. The Ruling goes on to provide:

> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.
>
> The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.
>
> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain function over time.

---

[5] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy." *Bunnell v. Sullivan*, 947 F.2d 341, 346 n. 3 (9th Cir. 1991). While they do not have the force of law, they represent the Secretary's interpretations of its regulations; therefore, courts given them deference unless they are inconsistent with the statute or regulations. *Id*.

*Id*. at * 6.

The Ruling further states that if obesity is found to be a medically determinable impairment, "any functional limitations resulting from the obesity" must be considered in the RFC assessment. *Id*. at * 7.

An ALJ need not discuss every piece of evidence presented in a case, but is required to state why he or she chooses to discount "significant probative evidence." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). The Commissioner is correct that Plaintiff has not shown there was any evidence, let alone "significant probative evidence," that Plaintiff's obesity imposed any functional limitations on Plaintiff's ability to work. As the Commissioner pointed out, none of his medical providers made mention of Plaintiff's weight or obesity. Nor did any medical provider comment or opine that Plaintiff had any functional limitation due to his obesity. (AR 277-530.) Plaintiff did discuss being unable to walk more than a block with Dr. Gerson (consultative, evaluating physician), but attributed this to his back and knee pain and not to his weight. (AR 465.)

At the hearing before the ALJ, Plaintiff's counsel opted to make an opening statement and did not mention Plaintiff's obesity as contributing to his inability to work. (AR 37-38.) The attorney did not pose any questions to Plaintiff concerning his weight or limitations it posed. In the context of a discussion about his diabetes, the ALJ asked how Plaintiff was doing with his weight, to which Plaintiff responded: "Not good, because I'm not exercising. I can't get around." (AR 41.) The ALJ asked whether his doctor had him walking, and he responded: "She told me she would like for me to walk, but I can't." (AR 41.) Later in the transcript, he characterizes himself as being "a little heavy;" however, Plaintiff never discussed his weight affecting his ability to work or function.

There is no evidence in the record that any of Plaintiff's asserted functional limitations could be attributed to his weight. No doctor mentioned that Plaintiff was obese, or even ever discussed his weight. There is no mention of an inability to function as a result of his weight. Accordingly, the court finds the ALJ did not err in failing to discuss Plaintiff's weight or obesity in connection with her determination of Plaintiff's RFC and his ability to work at steps four and

five.

**D. Plaintiff's Credibility**

    **1. Summary of Argument**

Plaintiff argues that the ALJ erred in not articulating sufficient reasons for finding Plaintiff less than credible. (Doc. # 11 at 10-13.) In particular, Plaintiff contends that the ALJ's reasoning was not specific enough and a benign recitation of the medical record is inadequate. (*Id*. at 12.) As such, Plaintiff claims that his testimony should be credited which would result in a finding that he is limited to sedentary work and is disabled. (*Id*. at 12-13.) Therefore, he requests that the action be remanded to the ALJ for the calculation and payment of benefits. (*Id*. at 13.)

The Commissioner claims that the ALJ's finding of Plaintiff as less than credible is supported by substantial evidence in the record. (Docs. # 13/14 at 5-7.) First, the Commissioner points out that the ALJ noted Plaintiff claimed he could only lift ten pounds, sit for ten minutes at a time and stand for ten to fifteen minutes; however, his medical records from his neurological consultation with Dr. Leppla in March 2011 included normal musculoskeletal, sensory and neurological examinations. (*Id*. at 6.) In addition, Dr. Leppla noted that Plaintiff's MRI results were "remarkable for being unremarkable." (*Id*. at 7.) Next, the Commissioner indicates that when Plaintiff followed up with Dr. Leppla in December 2011, he was offered conservative treatment, and he reported that his symptoms were relatively mild when he took the medication Neurontin. (*Id*.) As a result, the Commissioner contends that the ALJ properly found Plaintiff's statements concerning his symptoms and limitations were not fully credible. (*Id*.)

    **2. Standard**

"[A] claimant's credibility becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective statements may tell of greater limitations than can medical evidence alone." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001) (citing SSR 96-7p (1996)). Thus, a claimant's credibility is often crucial to a finding of disability. The ALJ is responsible for determining credibility. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Magallanes*, 881 F.2d at 750; *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

In general, when deciding to accept or reject a claimant's subjective symptom testimony, an ALJ must engage in two steps: an analysis under *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (the "*Cotton* test"), and an analysis of the credibility of the claimant's testimony regarding the severity of his or her symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *see also* 20 C.F.R. § 404.1529 (adopting two-part test).

First, under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective evidence of an underlying impairment 'which could reasonably be expected to produce pain or other symptoms alleged.'" *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (citing 42 U.S.C. § 423(d)(5)(A)); *see also Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010)*; Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). This test "imposes only two requirements on the claimant: (1) [he or] she must produce objective medical evidence of an impairment or impairments; and (2) [he or] she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1282 (emphasis original); *see also* 20 C.F.R. § 404.1529(a)-(b).

"Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (internal quotation marks and citation omitted); *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, --- F.3d ---, 2014 WL at * 16 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

An ALJ's credibility findings are entitled to deference if they are supported by substantial evidence and are "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's [symptom] testimony.'" *Bunnell,* 947 F.2d at 345 (quoting *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991)). "General findings are insufficient; rather,

the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry*, 622 F.3d at 1234 (internal quotation marks and citation omitted).

An ALJ may consider various factors in assessing the credibility of the allegedly disabling subjective symptoms, including: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; treatment, other than medication, received for relief of symptoms; any measures a claimant has used to relieve symptoms; and other factors concerning functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

When analyzing credibility, an ALJ may properly consider medical evidence in the analysis; however, the ALJ may not reject subjective pain testimony "on the sole ground that it is not fully corroborated by objective medical evidence[.]" *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (holding ALJ properly determined credibility where claimant's testimony was contradictory to and unsupported by objective medical evidence).

**3. Analysis**

While the ALJ could have provided a more specific link between the testimony she was rejecting and the reasons for doing so, the court finds that the ALJ's analysis is sufficiently specific such that the court can conclude that the ALJ did not arbitrarily discount Plaintiff's testimony. *See Bunnell,* 947 F.2d at 345 (citation omitted).

> The ALJ summarized Plaintiff's testimony as follows:
> He lived with his wife. He spent the day sleeping, watching television, and taking pain pills. He took Neurontin and Oxycodone, which made him sleepy. He did not do household chores. He had a driver's license and drove about twice a week. He grocery shopped with his wife, but he held on to the cart for support or used an electric scooter. His diabetes and hypertension were treated with diet and medication. He used an electric blanket to keep his legs from going numb. He injured his back in a slip and fall at work. He had pain in his right buttocks, and right leg. He had previous surgery, with continued pain and swelling in his left knee. The cold exacerbated his symptoms. He used a cane, which he said was prescribed by a doctor. He could lift 10 pounds. He could sit for 10 minutes. He could stand for 10 to 15 minutes. He could walk half a block.

(AR 25.)

While the ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause his alleged symptoms; she found that his statements concerning the intensity, persistence, and limiting effects of the symptoms were not fully credible to the extent they were inconsistent with the RFC. (AR 26.)

The ALJ noted a September 2010 MRI of the lumbar spine with no significant foraminal narrowing. (AR 24.) She also discussed Dr. Leppla's March 2011 neurological consultation of Plaintiff, noting that Plaintiff presented with complaints of right-sided radiculopathy, but his musculoskeletal examination revealed 5/5 muscle and motor strength and normal muscle bulk and tone. (AR 24.) He likewise had a normal neurological and sensory examination, including the medial and lateral aspect of his right thigh, calf and foot. (AR 24.) The ALJ also discussed Dr. Leppla's notation that Plaintiff's 2010 MRI images of the lumbar spine were "remarkable for being unremarkable." (AR 24.) Dr. Leppla did request an updated MRI. (AR 24.)

The ALJ then mentioned the results of a 2011 MRI of the lumbar spine which showed: "epidural fat which effaced the thecal sac, mild posterior spurring and disc bulging at L5-S1, which abutted the S1 nerve root, and minimal spondylotic change at L4-5." (AR 24.) She also noted indicated that Plaintiff saw Dr. Leppla in December of 2011 for a follow up examination and consultation. (AR 24.) Plaintiff reported that when he took Neurontin on a regular basis, his symptoms were mild, but when he was off the medication he had difficulty walking. (AR 24.) He had a normal musculoskeletal examination. (AR 24.) His sensory examination demonstrated diminished sensation to light touch on the lateral aspect of the right thigh and right calf, but was intact in the medial aspect of thigh calf bilaterally. (AR 24.)  Dr. Leppla reviewed the October 2011 MRI images and offered conservative treatment. (AR 24.) The ALJ indicated that Plaintiff reported that previous physical therapy failed to relieve his symptoms, and Dr. Leppla discussed lumbar surgery. (AR 24.)

Next, the ALJ stated that Plaintiff saw Dr. Gerson for a consultative physical examination in December 2010. (AR 24.) Plaintiff complained of low back pain with radicular pain in the right lower extremity and diabetes mellitus. (AR 24.) He reported subjective pain in the lumbar and cervical spine. (AR 24.) He declined to tandem walk, walk on toes or squat and rise. (AR 24-25.) Dr. Gerson opined Plaintiff was capable of a range of light work activity, was able to carry

1  twenty pounds occasionally and ten pounds frequently. (AR 25.) He could stand and/or walk six
2  hours and sit for six hours in an eight hour work day. (AR 25.) He would be limited to occasional
3  postural limitations, but could never crawl. (AR 25.) He was limited to occasional bilateral
4  reaching above the shoulders, and should never work around moving machinery because of his
5  back, right shoulder, neck and knees. (AR 25.)

6  The ALJ reviewed the opinions of State agency medical consultant Dr. Henry from
7  March 2011. (AR 25.) She likewise concluded Plaintiff was capable of a range of light work
8  activity. (AR 25.) Dr. Henry's opinions were consistent with Dr. Gerson's. Dr. Henry also opined
9  that Plaintiff was partially credible, but that the evidence did not fully support the severity of his
10 allegations. (AR 25.)

11 The ALJ gave Dr. Gerson and Dr. Henry's opinions great weight, finding they were
12 supported by the medical evidence in the record. (AR 25.)  She noted that Plaintiff complained of
13 low back pain with radicular symptoms in the right buttocks, thigh, calf and foot, and MRIs of
14 the lumbar spine in September 2010 and October 2011 showed minimal degenerative changes
15 and an L5-S1 disc bulge. (AR 25.) She stated there was no evidence of nerve root involvement or
16 nerve impingement. (AR 25.) She highlighted Plaintiff's statement that when he took Neurontin
17 his symptoms were relatively mild. (AR 25.) The ALJ noted that his complaint of shoulder pain
18 on range of motion was addressed with the limitation on bilateral overhead reaching. (AR 25.)

19 In sum, the court finds the ALJ adequately set forth clear and convincing reasons for
20 finding Plaintiff less than credible. The ALJ did so by describing Plaintiff's subjective symptom
21 testimony and setting forth evidence demonstrating that Plaintiff's claim that he needed further
22 limitations than those assessed by the ALJ was inconsistent with the objective medical evidence
23 and the observations and opinions of his evaluating physicians indicating he was capable of a
24 range of light work.

25 As a result, the ALJ's decision should be affirmed.
26 ///
27 ///
28 ///

# V. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Remand and/or Reversal (Doc. # 11) be **DENIED** and that the Commissioner's Cross-Motion for Summary Judgment (Doc. # 13) be **GRANTED**, and the decision of the ALJ be **AFFIRMED.**

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.

DATED: August 12, 2014

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE